IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

**RACHEL ARCHULETA**,

    Plaintiff,

vs.                                            Case No. 1:24-cv-00157-WJ-LF

**MATTHEW PHELPS, in his individual capacity**,
**JAMES LAPORTE, in his individual capacity,**
**JOEL HOLT, in his individual capacity,**

    Defendants.

**MEMORANDUM OPINION AND ORDER**
**DENYING MOTION TO DISMISS AND STAYING PROCEEDINGS**

**THIS MATTER** comes before the Court upon Defendants Matthew Phelps, James LaPorte, and Joel Holt's Motion to Dismiss (**Doc. 19**). Defendants assert they are immune from suit under the doctrine of qualified immunity and move to dismiss all counts. (**Doc. 19 at 1**). Defendants also move to dismiss Count IV for failure to state a claim under Fed. R. Civ. P. 12(b)(6) and Count V as barred under the *Heck* doctrine. (**Doc. 19 at 7-8; 10**). Having considered the parties' briefings and applicable law, the Court finds that the Motion to Dismiss should be **DENIED** at this stage of the proceedings and without prejudice to a renewed motion at a later time on a more fully developed record. The Court also determines *sua sponte* that this case should be **STAYED** under the *Younger* doctrine and inherent authority of the Court based on the related ongoing state criminal prosecution of Plaintiff.

## BACKGROUND

For purposes of this Motion, the Court relies upon the following facts, as presented by Plaintiff, Rachel Archuleta, in her Complaint. (**Doc. 1**). This case arises out of the alleged illegal entry into Plaintiff's home (Count I), unlawful arrest (Count II), use of excessive force (Count III), retaliation against Plaintiff as a result of her First Amendment protected speech (Count IV), and the continued malicious prosecution of Plaintiff (Count V). (**Doc. 1 at 1**).

On February 17, 2021, the Rio Rancho Police Department (RRPD) received a 911 phone call from Plaintiff's ex-boyfriend, Jonathan Brandt, requesting police officers be sent to Plaintiff's home. (**Doc. 1 at 3-4**). Mr. Brandt declined to provide any explanation for why he required emergency police assistance prior to hanging up the phone and failed to pick up the phone when dispatchers called back. *Id.* (**Doc. 23 at 9**). Once Defendant Officer Matthew Phelps arrived, he and the other officers heard arguing within the home and began knocking on the door and front window, in addition to ringing the doorbell. (**Doc. 1 at 3-4**). The officers attempted to make contact with Mr. Brandt for approximately thirty minutes. *Id*. During this time, Plaintiff yelled at the officers through a closed window, saying that she would not answer the door and the officers needed to leave her home. *Id*.

Defendant James LaPorte, one of the other officers on the scene with Defendant Phelps, then contacted their superior officer, Defendant Joel Holt. (**Doc. 1 at 5**). Defendant LaPorte informed Defendant Holt that they could hear raised voices within the home, Plaintiff had told them to leave, and neither occupant would come to the door to interact with the officers. *Id*. Defendant Holt authorized a warrantless entry of the home to check on the welfare of Mr. Brandt by announcing their presence, letting the occupants know they needed to make contact with them, and informing them that the officers could not leave until they confirmed all the occupants were

2

safe. *Id*. Defendants Phelps and LaPorte entered through the open garage, and after knocking and announcing their presence, then entered the home. *Id.* at 6. They called for Plaintiff and Mr. Brandt to come out, to which Plaintiff responded from her bedroom once again that the officers needed to leave her home. *Id*.

The officers reiterated that they needed to speak with Plaintiff and Mr. Brandt before they could leave, and subsequently entered Plaintiff's bedroom. (**Doc. 1 at 7**). There were no signs of a struggle or a physical altercation, and Mr. Brandt informed the officers they were "fixing things." *Id*. Defendant LaPorte insisted that Plaintiff needed to leave the bedroom to allow the officers to speak separately with Plaintiff and Mr. Brandt. *Id.* at 8. Plaintiff refused to comply with Defendant LaPorte's order. *Id*. He then approached Plaintiff and attempted to physically guide her out of her bedroom. *Id*. Plaintiff refused to leave her bedroom, so Mr. Brandt volunteered to leave the room with the officers. *Id.* at 9. At this point, Plaintiff attempted to follow the officers and Mr. Brandt out of the bedroom, when Defendant LaPorte blocked her exit. *Id.* He told her she needed to remain in the bedroom and when she attempted to leave again, Defendant LaPorte order Defendant Phelps to cuff her. *Id.* at 10. When placing Plaintiff in handcuffs, Defendant Phelps grabbed her arm and took her to the ground, which resulted in injury to Plaintiff's arm.[1] *Id.* Defendant LaPorte and another officer grabbed her legs, while Defendant Phelps handcuffed her. *Id.* When questioned about what Defendant LaPorte intended to do with Plaintiff regarding her behavior of resisting while being placed in cuffs, he said "I'm not going to charge her." *Id.* at 11.

After Plaintiff was assessed by emergency responders for her injuries, Defendant Holt came to her home, where Plaintiff complained about the officers' entry and use of force against

---

[1] Plaintiff's complaint is internally inconsistent regarding the injury to her arm, alleging a fracture to her elbow (*see* **Doc. 1 at 2**) and broken arm (*see* **Doc. 1 at 9-10, 12, 18; Doc. 23 at 16, 17-18**). This issue is not material to the Motion to Dismiss.

3

her. (**Doc. 1 at 11**). She requested an internal investigation into the incident. *Id*. The officers eventually determined that there was no domestic violence incident at Plaintiff's residence and no domestic violence charges were brought against Mr. Brandt or Plaintiff. *Id.* **at 11-12**.

Two weeks after the incident, on March 3, 2021, Plaintiff contacted Defendant Holt to inquire about how the investigation into the officers' conduct against her was going. (**Doc. 1 at 12**). She told him her arm had been broken as a result of the force used to restrain her and she was consulting an attorney about legal action*. Id*. The following day, on March 4, 2021, Defendant Phelps filed criminal charges against Plaintiff for felony battery on a peace officer contrary to NMSA 1978, § 30-22-24 and two counts of misdemeanor resisting, evading, and obstructing an officer during arrest, contrary to NMSA 1978, § 30-22-01(B) and 31-19-1. *Id.* **at 12-13**. The state criminal case was docketed as No. D-1329-CR-2021-00258. (**Doc. 19-1**). Plaintiff initially pled no contest to reduced charges and judgement was entered; however, Plaintiff filed a Petition for Writ of Habeas Corpus and withdrew her plea. (**Doc. 19 at 10;** *see* **Doc 23-1**). The conviction was vacated and the next day criminal proceedings on the charges against Plaintiff were reinstated and are currently pending in New Mexico State Court. *Id.*; (**Doc. 23 at 23;** *see also* **Doc. 23-2, Doc. 23-3**). At this time, there is a hearing scheduled for April 9, 2024 in state court, but there is no current trial setting in the state court case.

## DISCUSSION

Plaintiff brings this suit alleging five counts of civil rights violations under 42 U.S.C. § 1983. Count I is a claim of illegal entry into Plaintiff's home violating her Fourth Amendment rights. (**Doc. 1 at 13**). Count II is a claim alleging an illegal seizure of Plaintiff's person, effectuating an unlawful arrest contrary to the Fourth Amendment. (**Doc. 1 at 15**; **Doc. 23 at 15**). Count III is a claim alleging use of excessive force in illegally detaining Plaintiff by Defendant

4

Phelps and Defendant LaPorte in violation of the Fourth Amendment. (**Doc. 1 at 16**). Count IV is alleging retaliatory action in response to Plaintiff's First Amendment protected speech in violation of the Fourth Amendment. (**Doc. 1 at 17**). Lastly, Count V alleges malicious prosecution of Plaintiff in violation of the Fourth Amendment. (**Doc. 1 at 18**).

Defendants raise three issues for dismissal in the case.[2] First, they assert Defendants are entitled to qualified immunity as they were acting in their official capacity as law enforcement officers under color of state law, and Plaintiff fails to allege a violation of her well-established constitutional rights regarding all counts. (**Doc. 19 at 1**). Second, Plaintiff's complaint of retaliation fails to allege facts sufficient to establish retaliatory action, specifically failing to link her speech to the actions of individual Defendants as to Count IV. (**Doc. 19 at 7**). Finally, Plaintiff's pending criminal charges bar her malicious prosecution claim from being brought under the *Heck* Doctrine regarding Count V.[3] (**Doc. 19 at 1, 10**). Plaintiff responds to the Motion to Dismiss by asserting that Defendants are not entitled to qualified immunity, as Plaintiff has established her constitutional rights and sufficiently pled factual allegations that Defendants violated those rights. (**Doc. 23 at 1**). On Count V, Plaintiff responded that the Court should stay ruling until the conclusion of the ongoing parallel state proceedings. (**Doc. 23 at 23**). Defendants reply by asserting that Plaintiff has not plead a sufficient legal basis for a stay of proceedings. (**Doc. 27 at 1-2**).

---

[2] Defendants also moved for Plaintiff's Fourteenth Amendment claims to be dismissed (**Doc. 19 at 9**) however, the Fourteenth Amendment merely incorporates the Bill of Rights (including the First and Fourth Amendment) against the states. *See McDonald v. City of Chicago*, 561 U.S. 742, 763 (2010). There are no stand-alone Fourteenth Amendment claims.

[3] The *Heck* doctrine emanates from *Heck v. Humphrey*, 512 U.S. 477, 484 (1994). It bars malicious prosecution claims unless plaintiff can demonstrate that the prosecution ended without a conviction. *Thompson v. Clark*, 596 U.S. 36, 39 (2022).

**I. The Court Denies the Motion to Dismiss Without Prejudice**

Civil complaints must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint that fails to plead a plausible claim for relief is subject to dismissal. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). The Court accepts all well-pleaded factual allegations as true and views them in the light most favorable to the plaintiff as the non-moving party. *Truman v. Orem City,* 1 F.4th 1227, 1235 (10th Cir. 2021) (citing *Alvarado v. KOB-TV, L.L.C.,* 493 F.3d 1210, 1215 (10th Cir. 2007)). As a general rule, the Court may consider only the contents of the complaint when ruling on a motion to dismiss. *Goodwill Indus. of Cent. Okla., Inc. v. Philadelphia Indem. Ins. Co.*, 21 F.4th 704, 709 (10th Cir. 2021) (citing *Berneike v. CitiMortgage, Inc.*, 708 F.3d 1141, 1146 (10th Cir. 2013)). But, as an exception to the general rule, the Court may also consider documents that a plaintiff (1) attaches to her complaint; (2) incorporates by reference in her complaint; or (3) refers to in her complaint and that are central to her complaint and indisputably authentic. *See Berneike*, 708 F.3d at 1146 (quoting *GFF Corp. v. Associated Wholesale Grocers, Inc.,* 130 F.3d 1381, 1384 (10th Cir. 1997)).

If the Court considers documents outside the pleadings other than those excepted from the rule, the Court must convert the motion to dismiss into a motion for summary judgment. Fed. R. Civ. P. 12(d); *Carter v. Stanton*, 405 U.S. 669, 671, 92 S.Ct. 1232 (1972). The Court must inform the parties of the conversion to a summary judgment motion and give the parties a reasonable opportunity to accumulate and present all relevant evidence. Fed. R. Civ. P. 12(d); *Miller v. Glanz,* 948 F.2d 1562, 1565 (10th Cir. 1991) (citing *Ohio v. Peterson, Lowry, Rall, Barber & Ross*, 585 F.2d 454, 457 (10th Cir. 1978)). Failure to do so constitutes reversible error. *Cuervo v. Sorenson,* 112 F.4th 1307, 1312-1313 (10th Cir. 2025). *See, also, Lowe v. Town of Fairland*, 143 F.3d 1378,

1381 (10th Cir. 1998).

Generally, a defendant who asserts qualified immunity in a § 1983 civil rights suit is presumptively immune from suit. *Truman*, 1 F.4th at 1235 (quoting *Est. of Smart by Smart v. City of Wichita*, 951 F.3d 1161, 1168 (10th Cir. 2020)). A plaintiff can overcome the presumption by showing that (1) the defendant's actions violated a constitutional or statutory right, and (2) that right was clearly established at the time of the defendant's complained-of conduct. *Id.* (citing *Thomas v. Kaven*, 765 F.3d 1183, 1194 (10th Cir. 2014)). The doctrine of qualified immunity shields officials from liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). In evaluating whether Plaintiff has sufficiently alleged facts to overcome the presumption of qualified immunity, Plaintiff must 1) identify an on-point Supreme Court or published Tenth Circuit decision that clearly establishes her rights, and 2) allege facts that Defendants violated her constitutional rights. *Truman*, 1 F.4th at 1235. The Court has discretion to decide the order in which these two prongs are decided. *Roberts v. Winder*, 16 F.4th 1367, 1374 (10th Cir. 2021) (citing *Pearson v. Callahan*, 555 U.S. 223, 236 (2009)).

In the posture of a Rule 12(b)(6) motion, however, when a complaint is susceptible to multiple interpretations, the Court is to construe the complaint liberally to allege a constitutional violation. *See Peterson v. Jensen*, 371 F.3d 1199, 1202–03 (10th Cir. 2004) (citing *Sutton v. Utah State Sch. for Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999) (viewing the complaint in the light most favorable to the non-moving party in a Rule 12(b)(6) analysis)). Asserting qualified immunity on a motion to dismiss "subjects the defendant to a more challenging standard of review than would apply on a motion for summary judgment." *Peterson v. Jensen*, 371 F.3d 1199, 1201 (10th Cir. 2004) (citation omitted). On a motion to dismiss, it is "the defendant's conduct as alleged

in the complaint that is scrutinized for objective legal reasonableness." *Thomas*, 765 F.3d at 1194.

The Court must consider all well-pled allegations as facts and take all reasonable inferences in the light most favorable to the plaintiff. *Waller v. City & Cnty. Of Denver*, 932 F.3d 1277, 1282 (10th Cir. 2019). However, the Court will disregard conclusory statements and only examine the remaining factual allegations. *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012). But the Court must also "consider the facts from the viewpoint of prudent, cautious, and trained officers." *United States v. Porter*, 594 F.3d 1251, 1258 (10th Cir. 2010) (citing *United States v. Najar*, 451 F.3d 710, 718 (2006)) (internal quotation omitted). "[O]fficials can still be on notice that their conduct violates established law even in novel factual circumstances." *Hope v. Pelzer*, 536 U.S. 730, 741 (2002). However, if the caselaw is not clear, so that a reasonable officer could have interpreted it in a way that made the officer's conduct constitutional, the officer is entitled to qualified immunity. *Reichle v. Howards*, 566 U.S. 658, 666 (2012).

In this case, the parties' filings make clear that the determination of whether the officers' entry into Plaintiff's residence was constitutional is highly dependent on the facts and circumstances of the case. *See, e.g.,* Reply, (**Doc. 27**). The parties strongly dispute not only the facts and circumstances of the officers' actions but also the reasonable inferences that can be drawn from the facts. (**Doc. 19 at 3-9, Doc. 23 at 9-19, Doc. 27 at 3-**24). Moreover, both the Defendants' Motion to Dismiss (**Doc. 19**) and the Plaintiff's Response (**Doc. 23**) ask the Court to consider materials (**Doc. 19-1, 23-1, 23-2, 23-**3)[4] outside the allegations of the Complaint and not within any exception to the general rule that only the allegations of the complaint may be considered at the Rule 12(b)(6) stage.

---

[4] These materials relate to the state court proceedings and relate to events occurring after the filing of the Complaint in this case. They include Ms. Archuleta's original guilty plea in state court and the habeas corpus petition allegations made on her behalf.

If the Court considers matters outside the Complaint, Tenth Circuit precedent requires the Court to convert the Motion to Dismiss into a motion for summary judgment and allow any appropriate discovery. *Cuervo v. Sorenson,* 112 F.4th at 1312-1313. In this case, construing the Complaint in the light most favorable to Plaintiff, the Court concludes that there are issues on qualified immunity that cannot be resolved without considering matters outside the Complaint. *Peterson v. Jensen*, 371 F.3d at 1202–03. Moreover, as set out, below, the determination by the New Mexico state court of the related criminal case against Plaintiff my significantly impact the Court's ruling on the issues of whether Plaintiff's constitutional rights were violated by the individual officers as well as whether the officers are entitled to qualified immunity. *Berneike*, 708 F.3d at 1146; *Thomas v. Kaven*, 765 F.3d at 1194. Therefore, the Court declines to convert the Motion to Dismiss to a motion for summary judgment at this time. Instead, the Court will deny the Motion to Dismiss without prejudice to refiling of the motion at a later stage of the proceedings and on a more fully developed record. Fed. R. Civ. P. 12(d); *Miller v. Glanz,* 948 F.2d 1562, 1565 (10th Cir. 1991); *Cuervo v. Sorenson,* 112 F.4th at 1312-1313.

**II. All claims are stayed by the Court until the termination of the parallel state proceedings.**

    **A.  The claims should be stayed under the *Younger* Doctrine.**

Normally, federal courts have a "virtually unflagging obligation … to exercise the jurisdiction given" to the court. *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976). However, the Court is prohibited from interfering with parallel ongoing state proceedings. *Glaser v. Wilson*, 480 F. App'x. 499, 499 (10th Cir. 2012) (unpublished) (citing *Younger v. Harris*, 401 U.S. 37, 91 (1971)). If the ongoing state court proceedings are being challenged in the federal district court, then the *Younger* doctrine prevents the federal district court from interfering in those state proceedings. *Dauwe v. Miller*, 364 F. App'x 435, 436 (10th Cir.

2010) (unpublished). In order to satisfy the conditions of *Younger*, 1) the pleadings must indicate the state proceedings are ongoing, 2) the state's proceedings are an adequate forum to hear the issues, and 3) the state's proceedings involve important state interests. *Goings v. Sumner Cnty. Dist. Att'y's Office*, 571 F. App'x 634, 637 (10th Cir. 2014) (unpublished).

The *Younger* doctrine applies in this case because 1) the criminal proceedings in state court are ongoing, 2) the state prosecution is a recognized important state interest, and 3) the Tenth Circuit has held that state criminal proceedings provide an adequate forum to challenge the validity of Defendants' actions. *See Wilson v. Morrissey*, 527 F. App'x 742, 744 (10th Cir. 2013) (unpublished). First, it is not disputed that Plaintiff's criminal case in state court is ongoing. (**Doc. 19 at 10; Doc. 23 at 23; Doc. 23-2; Doc 23-3**). Second, the Tenth Circuit has recognized that "the prosecution of crimes occurring within its jurisdiction is an important state interest." *Wilson*, 527 F. App'x at 743. And third, the state court is an appropriate forum to determine the validity of the officers' actions. In the motion to dismiss filings, the parties have attached filings from the state court proceedings for the Court's consideration. (**Doc. 19-1, Doc. 23-1, Doc. 23-2, Doc. 23-3**). Further, Plaintiff has recognized that the state court proceedings are the appropriate forum by filing a suppression motion in state court and alleging the proceedings will soon terminate in her favor. (**Doc. 23-2; Doc. 23-3**). This all weighs in favor of the state court proceedings going forward without interference from this Court. *Deakins v. Monaghan*, 484 U.S. 193, 203 (1988).

*Younger* abstention "is non-discretionary; it must be invoked once the three conditions are met, absent extraordinary circumstances." *Amanatullah v. Colo. Bd. of Med. Exam'rs*, 187 F.3d 1160, 1163 (10th Cir.1999). The issue of jurisdiction under *Younger* may be raised by the Court *sua sponte* as a "federal plaintiff should not be permitted the luxury of federal litigation of issues presented by ongoing state proceedings." *Morrow v. Winslow*, 94 F.3d 1386, 1391 (10th Cir.

10

1996); *see also Bellotti v. Baird*, 428 U.S. 132, 143 n.10 (noting that when all of the conditions of *Younger* clearly exist in the record, courts should address application of the *Younger* doctrine *sua sponte*). As Plaintiff's case falls squarely within *Younger*, the Court *must* stay the case as all three conditions have been met.[5] *Amanatullah*, 187 F.3d at 1163. For those reasons, the Court finds *sua sponte* that dispositive issues relating to the Complaint are properly being adjudicated in the state criminal proceedings and the claims should be stayed under *Younger*.[6]

It is not clear to the Court whether the *Younger* doctrine would allow the Plaintiff to move forward in federal court on the excessive force claim in Count III if convicted for resisting arrest in the state court proceedings; however, the Court need not decide that question now. Most likely the excessive force claim does not fall under *Younger* (*see Ellis v. Morzelewski,* 2022 WL 3645850, 11 (D. Utah Aug. 24, 2022)). However, as Defendants assert qualified immunity on Count III, the Court would have to analyze Plaintiff's claim using the excessive force analysis under *Graham v. Connor*, 490 U.S. 386, 396 (1989). That analysis would require the Court to inquire whether Plaintiff resisted arrest under the third *Graham* factor. *Graham*, 490 U.S. at 396. Therefore, the excessive force claim also should be stayed under *Younger* as to not invalidate the ongoing state proceedings.

---

[5] Under *Younger*, the Court has the discretion to dismiss the claims without prejudice or stay deciding the case until after the state proceedings have terminated. *Louisiana Power & Light Co. v. City of Thibodaux*, 360 U.S. 25, 30 (1959). A stay of civil proceedings pending the outcome of criminal proceedings should be granted if failure to do so would substantially prejudice the parties. *Creative Consumer Concepts Inc. v. Kreisler*, 563 F.3d 1070, 1080 (10th Cir. 2009). Plaintiff filed the Complaint in this case two days before the statute of limitations expired on February 17, 2024. Therefore, the Court is going to stay deciding the claims, rather than dismissing them without prejudice, to avoid any statute of limitations issue.

[6] The Court has not made any finding on the legality of the entry into Plaintiff's home, only finding the criminal proceedings in state court may determine whether or not the entry and subsequent events in the home were unconstitutional.

### B. Even if it is not appropriate to stay the claims under *Younger*, all claims should be stayed under the inherent authority of the Court.

District courts have broad discretion to stay proceedings as inherent in the power to control the court's own docket.[7] District courts will stay deciding cases for a variety of reasons.[8] The Court determines that staying the claims under its inherent authority is also appropriate in this case because if Plaintiff is convicted of resisting arrest and battery of a peace officer in state court, Count II, IV, and V could no longer present viable claims in federal court.

While it is not clear to the Court that Count III definitively falls under the *Younger* doctrine, in the interest of judicial efficiency all claims should be stayed. Requiring parties to conduct discovery on one claim would waste parties' resources and would be duplicative if Plaintiff's other claims survive following the termination of the state court proceedings. It benefits both parties and the Court to stay this case as the criminal proceedings may narrow the issues and streamline discovery for this case. *See, e.g., Douglas v. United States*, 2006 WL 2038375, at 5 (N.D. Cal. 2006) (unpublished) ("Allowing the criminal action to proceed first may narrow the issues and streamline discovery in the civil proceeding"). The public interest in swift resolution of criminal matters also supports staying civil litigation so Plaintiff may focus on defending herself in the state criminal case.

---

[7] *See Landis v. N. Am. Co.*, 299 U.S. 248, 255 (1936) (the power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants.); *Clinton v. Jones*, 520 U.S. 681, 707 (1997) (The District Court has broad discretion to stay proceedings as an incident to its power to control its own docket.); *Rhines v. Weber*, 544 U.S. 269, 276 (2005); *Doe v. Jones*, 762 F.3d 1174, 1178 (10th Cir. 2014) ("District courts have the prerogative to decide whether a stay is warranted given the specific circumstances of a case").

[8] *See Nat'l Union Fire Ins. Co. of Pittsburgh, PA. v. Kozeny,* 115 F. Supp. 2d 1243 (D. Colo. 2000) (stay deciding the case because of the similarity of the two actions, promotion of judicial efficiency, adequacy of relief available, and timing of the filings.); *Wallace v. Kato*, 549 U.S. 384, 393–94 (10th Cir. 2007) ("If a plaintiff files a false-arrest claim before he has been convicted (or files any other claim related to rulings that will likely be made in a pending or anticipated criminal trial), it is within the power of the district court, and in accord with common practice, to stay the civil action until the criminal case or the likelihood of a criminal case is ended."); *Creative Consumer Concepts, Inc. v. Kreisler*, 563 F.3d 1070, 1080 (10th Cir. 2009) (" [to] prevent either party from taking advantage of broader civil discovery rights or to prevent the exposure of the criminal defense strategy to the prosecution."); *Heck*, 512 U.S. at 487, n.8 ("abstention may be an appropriate response to the parallel state-court proceedings").

The Court must also consider Plaintiff's rights as a criminal defendant. "When deciding whether to stay the claim, the court should consider whether a stay is necessary to protect a party's Fifth Amendment rights, to prevent either party from taking advantage of broader civil discovery rights or to prevent the exposure of the criminal defense strategy to the prosecution." *Ellis,* 2022 WL 3645850 at 11 (citing *Creative Consumer Concepts, Inc. v. Kreisler*, 563 F.3d 1070, 1080 (10th Cir. 2009)) (internal quotation omitted). As both cases arise out of the same incident and implicate similar legal issues, the Court should stay the civil case so Plaintiff does not need to choose between exercising her constitutional rights and litigating her claims. *Id.* The decision to stay the remaining counts of the Complaint does not preclude parties from requesting settlement negotiations during the stay. Once the state court proceedings have terminated, counsel must update the Court within 90 days regarding the status of this suit.

## CONCLUSION

For the reasons stated above, the Motion to Dismiss (**Doc. 19**) is **DENIED** without prejudice to a renewed motion at a later stage of the proceedings and on a more fully developed record. Further, the case is **STAYED** pending the termination of the state court proceedings. Counsel must update the Court within 30 days of the entry of judgment in the state district court criminal proceedings regarding the status of this case. The parties shall also advise the Court if an appeal has been or will be taken in the state court case and each party's position on whether the stay of proceedings in this case should be lifted or remain in effect pending the outcome of appellate review.

**IT IS SO ORDERED**.

/s/

‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾
WILLIAM P. JOHNSON
SENIOR UNITED STATES DISTRICT JUDGE